Bernard Ryan, P. J.
After an extended trial, following which it became necessary for the claimants to file an additional claim in order to complete the jurisdiction of the court, a stipulation was entered into between the parties which provided that all of the above-numbered claims be consolidated and that they be considered fully and finally submitted for decision without additional briefing, evidence, exhibits, additional view or requests to find. Thereafter this court rendered its decision *397 whereby, upon formal findings of fact and conclusions of law, it awarded the claimants the sum of $15,775, with appropriate interest. The claimants now move this court for an order nunc pro tunc permitting them to submit proposed findings of fact and conclusions of law as of May 4, 1956, and reconsidering, revising and modifying the court’s decision and its findings, or, in the alternative, granting them a new trial, and for such other and further relief as may be just and proper.
Leave to submit proposed findings of fact and conclusions of law at this time is denied. Claimants had full opportunity to do this before the court rendered its decision. They fully briefed the case. The court has made detailed findings. In addition, the stipulation, dated December 12, 1956, constitutes a waiver by the claimants of any right to submit proposed findings.
The motion for a new trial is denied. No valid ground for granting such a motion has been presented. Claimants are dissatisfied with the amount awarded to them. Their remedy is by appeal for a review of the court’s decision.
After extended deliberation and review of the transcript of testimony, which filled more than 1,300 typed pages, we arrived at a figure which we believed, and still believe to be, fair compensation for the damages sustained by reason of the appropriations made which are the subject of these claims. In our decision we recited the acreage of the various parcels taken and we listed the items of consequential damages. By finding No. 28 we fixed the total damages, including the value of the parcels taken and consequential damages to the remainder in the sum stated. We did not break down the items. Claimant now presents to us for our consideration the decision of the Appellate Division, Fourth Department, in Claim No. 29670, wherein that court reversed a judgment of the Court of Claims and granted a new trial saying: “ We find it impossible to review adequately the judgment entered upon this award for the reason that the findings do not disclose the basis of the State’s liability for damages to claimant’s building, nor do they disclose what part of the damages awarded represent the value of the land appropriated, or what part represents damages, if any, to claimant’s building.” (McDougal v. State of New York, 3 A D 2d 981 [1957].)
We believe that the reason for the ruling in the McDougal case is found in the peculiar nature of that claim. The pleading alleged that a certain parcel of land had been appropriated and that its value was $2,500. The pleading then set up various acts of negligence, such as negligent planning, failure to make *398 proper provision for the support of the structure, negligent performance of the work, improper supervision, negligent investigation and report of subsurface conditions, and negligence in failure to shore up and protect the building and prevent it from settling. For these items the claimant demanded additional damages in the sum of $20,000. The decision of this court merely described the property appropriated, which “ consisted of a strip of land along the north side of, and adjacent to, the claimant’s building, measuring approximately 25 feet x 83 feet and containing about 0.053 acres ”, described the building located on claimant’s land, then found the fair market value of the claimant’s land and building to be $14,000 prior to the appropriation and $4,000 after the appropriation and directed an award to the claimant in the sum of $10,000.
We believe that this is not to be regarded as a ruling that in an appropriation case it is always necessary to separate the items of damage. We believe the holding in the McDougal case (supra) applies to the special circumstances therein involved. We believe that the measure of damages is the market value of the lands acquired whether they be part of a quarry, a mine or a farm, together with the value of the consequential effect of the taking upon the lands which remain.
Although we do not regard the McDougal decision as controlling herein, nevertheless, and without intending hereby to set a precedent, we do not hesitate to explain how we arrived at our award of $15,775. This we do for the guidance of the reviewing court if an appeal be taken.
The extremes of values, testified to as their opinion by experts on opposing sides, are at great variance. The witness Groves, for the claimants, working principally from the basis of tonnage production of gravel and sales prices thereof arrived at a value of $10,370 per acre. The witness Appleby, for the defendant, basing his opinion on average sales of gravel pits in the area at $458 per acre and a high of $1,000 per acre adopted the latter figure for the 3.359 acres taken where borings disclosed gravel at its greatest depth.
No direct proof of comparable sales Avas offered by either side as neither took advantage of the provisions of subdivision 1 of section 16 of the Court of Claims Act. Sales by Myer to Lancaster, by Fahey to Stage Farms and by Meyer to Metzloff, referred to upon the redirect examination of Groves and upon the cross-examination of Appleby, were of property in Erie County far distant from the MacKenzie holding and the record offers no reason for the court to regard them as comparable *399 sales or to rely upon the apparent sales prices as controlling herein.
Because of the depth of the gravel we have fixed a valuation of $1,500 per acre for the 3.359 acres of Parcel No. 440. With respect to Parcel No. 543 we rely upon the testimony of the witness Sill, an entirely disinterested person, for a finding that in this parcel there Avas valuable and recoverable gravel. But we are satisfied that it was not of such depth as that in the 3.359 acres and therefore Ave fix the value of 2.454 acres at $1,000 per acre. With respect to the remaining parcels in the flat-lands, after considering the entire record, we have come to the conclusion that the. recovery of any gravel deposits therein would not be an economical and profitable operation. We have therefore valued 9.743 acres at $150. The total of these figures is $8,953.95.
In addition Ave find consequential damages on account of the leaching bed, the spring and the pipe line in the amount of $6,800. This is broken doAvn as follows: Land necessary for site of new leaching bed tAvo acres at $1,000, $2,000; loss of the old leaching bed as it enhanced the value of the gravel pit prior to the appropriation, $3,000; loss of the spring and pipe line as it enhanced the Avhole property prior to the appropriation, $1,800. We do not make any award for the cost of cleaning the settling basin every 90 days. We do not accept as reasonable the figures given for this alleged expense nor do we believe it is a proper item of damages.
We do not make an award for the cost of tapping the existing water supply of the Village of Newark and of establishing a new pipe line therefrom. We believe that the amount stated herein-above is adequate recovery for the loss of the spring and pipe line as they enhanced the value of the whole property prior to .appropriation.
With respect to the expensive machinery allegedly purchased for the sole purpose of cleaning out the leaching basin, we decline to adopt this testimony. Surely the machinery is of value in regular, if not daily, use in the operation of the gravel plant. To charge the whole cost of the new machinery to the settling basin is unreasonable!
Except as hereinabove indicated, Adz., the explanation of our lump sum award heretofore directed herein, the motion is in all respects denied, Enter order,